Hearing ye, hearing ye, this Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Joseph E. Burkett presiding, along with Justice Catherine E. Zinoff and Justice Liam C. Brennan. The case is No. 2-19-0193, REEF-PCG, LLC, Plaintiff Appellee v. 747 Properties, LLC Defendant. Arguing for the Appellant, Vader National Electric, LLC, Craig G. Penrose. Arguing for the Appellant, Hill Fire Protection, LLC, and Hill Mechanical Corp., Philip A. Lutkohans. Arguing for the Appellee, REEF-PCG, LLC, Gregory P. Adama. Arguing for the Appellee, Kloon Construction, Jeffrey L. Hemera. Mr. Penrose, you may proceed. Thank you, and good morning, Your Honors, and may it please the Court Section 16 of the Mechanics' Lien Act is a clear and unequivocal pronouncement from the Illinois General Assembly that Mechanics' Lien claimants take priority for improvements they made over both prior, and particularly in this case, the subsequent encumbrances such as those created by the receiver certificates at issue in this appeal. The critical question of law for this de novo appeal is whether a court can issue an order that violates this unambiguous statute. Neither plaintiff, as a lender seeking foreclosure, nor the court-appointed receiver, nor defendant Kloon Construction, the general contractor which is essentially switched sides, nor Air Comfort have disputed the plain and unambiguous language of Section 16 of the Mechanics' Lien Act that states that a later encumbrance cannot jump over prior Mechanics' Lien. This point has clearly been conceded. Rather, the appellee's arguments are that the order was somehow exempt from following, or does not need to follow, the unambiguous dictates of Section 16. That is incorrect as a matter of law. Reef and the receiver claim a 100-year-old case that does not even mention Section 16 somehow controls, and Kloon makes an argument that was never raised before. Neither argument has merit. Mechanics' Lien claimants are not forced risk-takers for further development of a project after they have performed. The entire reason for the Mechanics' Lien Act is to protect lien claimants in their priority as envisioned in Section 16. Equity must follow the law. Court order under review must be reversed as a matter of law as it clearly violates Section 16. The plain and prohibitive text of Section 16 does not provide any support to allow the order under review to be exempt from its dictates. Section 16 states this conclusion in clear and unambiguous language. This becomes obvious when statute is broken down to its four principal parts. The statute states there can be no encumbrance, such as a new money lien at issue, and that no encumbrance shall operate upon the building, meaning that no encumbrance can affect the property or the improvements, and that no encumbrance shall operate upon the building until, meaning that such liens cannot operate until a specific time, and finally, that no encumbrance shall operate upon the building until a lien creditor shall have been satisfied, meaning the Mechanics' Lien claimants must get paid first. Section 16 is phrased in terms of mandatory absolutes and that there is no legal authority whatsoever to allow any later encumbrance to jump over prior Mechanics' Lien and receive first priority for the building and improvements, unless Mechanics' Lien are paid first. That is the entire case and the order violates Section 16 and requires reversal as a matter of law. Quickly addressing Reef and the Receiver's argument, Reef and the Receiver avoid discussing Section 16 mandatory language altogether and provide a singular argument that the 100-year-old of Pittsburgh plate glass versus Kranz controls and somehow allows a court to violate Section 16. As a matter of procedure, Reef and Receiver did not cite Pittsburgh plate glass in a written trial court motion, but the argument is wrong for the following three reasons. Number one, as previously mentioned in the opening, Section 16 was never even mentioned, referenced, or analyzed in Pittsburgh plate glass. If something is not even mentioned, it could simply not have been at issue or otherwise controlled. And number two, the Supreme Court in Pittsburgh plate glass made clear that the subordinated Mechanics' Lien interest under the Receiver's certificate never even appealed from that adverse order, so the issue was not even properly before the Supreme Court. This is clear from the opinion itself. And number three, and as a follow-up to reason number two, under principles of stare decisis, the decision cannot be controlling. This is so under the twin prongs. The case is controlling based on the material facts actually considered and the proposition of law referenced on those material facts. In Pittsburgh plate glass, the court was clear that there was no appeal, so there was no material fact even at issue. And number two, the proposition of law in that case referencing the Receiver's certificates was that there can be no collateral attack on an unappealed order. Pittsburgh plate glass cannot be controlled. Everything else in that case is nothing but 100-year-old dicta. And finally, the standard review needs to be addressed. Reef and the Receiver argue that the standard on review is abuse of discretion, but that is wrong. As we cited in our reply, the Lonto Federal Credit Union case is directly on point in this regard. In that case, briefly, was about whether an order giving a Receiver certain powers had violated a statute, the same general issue as here. And the court in that case held that the order violated the statute, so the order was reversed. And critically, the First District held that review was to be de novo concerning the statutory construction of that property. And just quickly addressing Kuhn's argument, Kuhn has essentially switched sides now and jumped over to supporting the plaintiff. Kuhn argues that Section 16 can be violated because Section 12 of the Mechanic Clean Act and also 1704B of the Mortgage Foreclosure Act allows a Receiver to operate, manage, and conserve such property. This is wrong for two reasons. First, this argument is never made before, so it's waived. And number two, even if considered, nothing in Section 12 or 1704 of the Mortgage Foreclosure Act permits a court to simply ignore Section 16 in the name of equity. And from a statutory construction standpoint, Illinois law is clear that when statutes concerning the same subject matter, they have to be harmonious with each other. And the only way to properly harmonize Section 16 with Section 12 and 1704 is in the manner we suggest. And anecdotally, if the legislature wanted to give Section 12 and 1704 the ability to avoid Section 16, it could have carved that out, but it did not. And in the prohibition of a mechanic's lien being jumped over by a later incumbent. I'll now hand over to my co-counsel to address the sufficiency of the evidence, unless the court has any specific questions on Section 16 of the standard of review. Justice Zinoff, your questions. Yes, thank you. Counsel, you talk about Pittsburgh plate glass being a hundred-year-old case and not mentioning Section 16, but it does construe Section 12 of the Mechanic's Lien Act in as identical, is it not, to the current version of Section 12, which does authorize the trial court to reprioritize mechanic's liens. Isn't that true? No, Your Honor. Section 12 is in the Mechanic's Lien Act and generally references in generic terms, I would put it, that a receiver can conserve, manage the property. It does not reference Section 16. And more importantly, Pittsburgh plate glass never mentioned Section 16. Maybe, and from a hypothetical standpoint, maybe the plaintiffs or the mechanic's lien claimants in that case never even raised Section 16. We just don't know. But in terms of the controlling value of that case, it's clear and the Supreme Court made clear that the mechanic's lien claimant did not even appeal from an adverse order. So the rest of that case really can be nothing more than non-controlling dicta. Well, in that case, really, the receiver appealed from the Chancellor's So the issue of reprioritization really was before the court. And it was, we are bound by Illinois law, certainly not any out of state authority. And since we're bound by Illinois law, since the issue was in front of our Supreme Court, I am struggling with why we should not follow this case. I understand that, Your Honor. The main issue is under stare decisis, the only issues that can be before the court are the ones that are controlling. There's no reference to Section 16. So we just don't know whether that was an issue or not. It certainly cannot be controlling. Well, I mean, when you say there's no reference to Section 16, but the thrust and point of Section 16 has to do with priority, correct? And so the issue itself was before the Supreme Court in Pittsburgh. They may not have said Section 16, but the issue was clearly there. Your Honor, I'm not so sure that the Supreme Court made that 100% clear. I'm just referencing their language where they state, it is true defendants in error objected to the order, but they did not prosecute and appeal from it. And the order was never reversed or set aside. The court had jurisdiction of the subject matter and of the parties, and its order was a valid binding order unless reversed or set aside and is not subject to collateral attack. So, and in our brief, we kind of referenced the, no offense to our long ago, the language in that case is not exactly 100% clear, but to assume that a Supreme Court case would avoid the clear language in Section 16. No party on this appeal has said Section 16 itself gives authority to simply have a later incumbent jump over a mechanics, a prior mechanics lien. So to assume that the Supreme Court meant that Section 12 could do that with no reference to Section 16 seems to be just a stretch that just would make no sense under stare decisis. And circling back to that, what material facts are at issue? They did not say they were construing Section 16. They said they were construing Section 12, which gives general authority to manage a property, but to assume that by not even referencing Section 16, which clearly existed back as far as 1903, in substantially the same form for what we're dealing with, to assume that they meant that Section 12 would trump Section 16 without even referencing that seems to be too far for stare decisis to be controlling. Thank you. I have other questions, but I will, I believe they would be on the topic that is going to be covered by counsel who's going to be also arguing this morning. So I will, since I'll save them then. Thank you. Justice Brennan, your questions. Justice Zinoff covered my questions for the most part on this particular topic. So I'm not going to add any more at this time. Thank you. Very well. I'll just ask this one single question. Mr. Penrose, you're familiar with the expression by our Supreme Court that when they pass upon a point argued by counsel, even though it may not be essential to the decision, that is judicial victim that must be followed. That's Cates v. Cates, a 1993 Illinois Supreme Court case. You accept that principle, do you not? Oh, absolutely, Your Honor. And if you want me to respond to Cates, I can certainly do that. Obviously, that was not raised in the appellatee's brief, but I'm certainly well-versed to be able to explain how Cates is not controlling it. And Cates did a good job, in my opinion, of talking about victim, which is what the court in that case kind of references, oh, by the way. And judicial victim, which Cates and Cates talked about, where they say it's not critical to the by-the-way, but it's kind of support, if you will. So the question is, what is the nuance of the judicial victim? Is the judicial victim that even though no party raised Section 12 or Section 16 in Pittsburgh, that the parties argue it, therefore, it was essential to the because the court, almost in the same language in Pittsburgh plate glass, used the phrase, it is doubtful they can be heard, but by the way, even if we were to decide this, it's clear the evidence supported it. So they did suggest it, but that is not passed upon. Section 16 was not passed upon by Pittsburgh plate, so I don't think it... Ask you if you accept the principle that I just articulated from Cates. My other question is this, with regard to Kloon, the new arguments that were raised, you also accept the principle that we may affirm on any basis supported by the record, even though an argument was not presented to the trial court. You accept that principle, correct? Sure. That's well-established law in on other terms, and we certainly argued it, so it's not like we were sandbags, so to speak. Okay. Thank you very much, Mr. Penrose. You'll have time for rebuttal. Mr. Lukianakis. Thank you, Your Honor. I think it's fair to say that all the subcontractors want the same thing, preserve the greatest value of the liens. We just do not see the value of these improvements having been shown at the trial court level. The court decided on no real evidence and based its decision entirely upon speculation. Cases such as these, modifying the priority rights of the parties must be done with great caution and must be in the interest of all parties, and only be done when a showing has been made that it is necessary to preserve the property. Here, there was no actual evidence submitted showing either. Unfortunately, the trial court just assumed it was in the best interest of the parties and necessary to preserve the property. All we have is an unverified lease, which the receiver advised was still acceptable to the GSA, even though it had no start date on it and no one was provided the right to determine the veracity of that statement. The receiver did say the GSA was expecting their space to be well underway within 90 days, and to my knowledge, nothing of substance has been done in that time period. We don't know if the GSA is still even going to be taking the space. Let us remember it is the movement's burden of proof. Here we had no proof, just a lease that may or may not proceed in an unverified motion, nothing else. It is very important to note that all of these cases of modifying the priority rights, including PPG, were done after a hearing. Here we have nothing in the record to show what the property is worth in its current condition. We have nothing in the record to tell us what the property would be worth if the improvements were done. So a true determination that could be made to see if the improvements actually create more value long-term than cost has never been done. We have nothing in the record to say whether the income will be sufficient to support the extra dollars being spent versus what the income would be in its present state. None of this was provided to court, and a request for this information to be before the court in a hearing was denied. Because of that denial, a speculative decision was made in a vacuum, with Judge Wheaton saying, quote, I think, end quote, it is in the best interest of everyone. She did not say the evidence showed it was in the best interest of all the parties, because there was no evidence. Even though we asked for an evidentiary hearing, both in our briefs and oral argument, that avenue was denied us. The court was in a hurry to get this going. To date, almost four months later, we have not seen a construction contract, a loan agreement, or any plans for the planned improvements. Granting a few weeks to have an actual hearing would not have been detrimental to the project. Further, Judge Wheaton pretty much said that to her, a before and after analysis of the value versus cost would add no value to her decision. That's the issue for the court has to decide. Are the lien claimants in a better place before spending this additional money, or after spending it? We and you have no idea the answer to that question before the trial court, because the trial court never allowed that to be analyzed. This is not the exercising of the great caution that is required under the case law. Appellees say we did not object to the lease being put into evidence. Nothing was put into evidence. The lease was attached to that unverified motion. To say we did not object to the lease being entered is nothing more than an attempt to obfuscate the real facts. We went much further than objecting to the lease. We asked for an actual hearing on all the issues, stating the evidence had not been provided to meet the high action. We would ask that you grant our appeal and overturn the trial court's decision or allow our client's rights to a priority lien not be taken away from them. Thank you for your time. Thank you, Mr. Lukasz. Justice Zinoff, your questions. Thank you. Excuse me. Counsel, you indicated that the trial court made certain assumptions, that there was no evidence introduced, but you also said and conceded that the GSA lease was attached to the motion and that there was no objection to it. So the court obviously read the motion. The motion was before the court. The lease was attached. So the court had to consider the effect of this lease on the property and on the value of the property. So to say that there was no evidence really, I think, skirts what is right in front of us, and you yourself brought it up. The fact that it wasn't, quote, labeled evidence, I don't think is essential here. Why is it essential? Well, first of all, we asked for a hearing that it be put into evidence, and it wasn't. We asked for a hearing that actually considered. And the lease here, I understand the lease may be, whether the lease is in evidence or not, it's not absolutely clear because there was no hearing. The important question is the lease doesn't answer the question. The question is, are, after you spend the money to increase, the quote, increase the value of the property, are you protecting the lien rights? Are you putting them in a better position, or are you hurting them? Because the case law does not allow you to hurt the original lien rights. The only way, if you're allowed to reprioritize, which obviously we think you're not, the only way to do that is to show that you're preserving the property, not decreasing the value for the, not decreasing the rights of the lien holders. And you can't tell that by what is in the record. Well, but now the trial court did indicate, and isn't it true that the building essentially is an empty shell without the value of this GSA lease? The building is not, quote, an empty shell. It has parts that are empty, parts that are more improved. We don't know what the value is with or without. Sorry. It was not $5 to $6 million, the value of the lease? We don't know. We don't know. That appraisal was not put into evidence. The judge had not seen that appraisal. And as you know, counsel's statements at an argument are not evidence. We don't know what the value is. None of us have had the right to check on appraisals before versus after, because I haven't seen them. They haven't been put in the appraisal. Let me ask you something else. Obviously, per statute, the obligation of the receiver is to preserve the property. Doesn't going ahead with this loan to allow the improvements to be made so that GSA could occupy its two floors of this building, preserve this property? And isn't that in and of itself in the best interest of the lien holders? No. I don't mean to disagree so strongly, but we do not know. Well, can I ask you a question? Why not? Because you have to do that. You have to do a financial analysis of what the lease is worth, what the improvements cost, and the present value calculation of that money. And also, got to remember, at the end of the day, what's going to happen to this property is it's going to be sold. So is it going to sell for more in its current condition, or is it going to be sold for more in its after condition? And what's it going to be worth after you put this additional debt and this additional work into the property? We just don't know. And that's why we asked for a hearing to determine that. A full hearing, which was granted in PPG, which was granted in CODI, which was granted in Fleming, all those cases that are cited in those briefs are all after a full hearing. And you don't believe that it is common sense that the value of the property is increased once it's improved? I agree that it's increased, Justice Leanoff. The question is, is it increased more than what the additional debt is going to Let's say that we pay $12 million or $11 million or $10 million or whatever to increase the value. But the present value of the property does not increase $10 million. It only increases $5 million. We've just put an additional $5 million or $7 million worth of debt on a property above and beyond what we've actually improved it to. Thank you. Those are the questions I have. Thank you, Justice Leanoff. Justice Brennan, your question, sir. Let me just ask, besides the before and after valuation, what other types of things would have you wanted to learn if you had been granted a hearing? I think we would have wanted to learn what the perspective of for some of the other leasehold tenants is, what the possible rates are. And another, this GSA lease, and I know it's there, but it's very important to read. There's nothing enforceable about this GSA lease. When you read the lease, GSA can look at the property after all the improvements are made and say, I don't like it and walk away. That's my point. You're absolutely right. The first page says, they're going to do a lease amendment at some later point to tell us if they're going to take it and when it's going to start. So it's very speculative whether they're going to take it. And the other types, you know, so we delve into that I think is very important, Justice Brennan. I think some of the other issues that we talked about were, you know, are these improvements being done in a proper, well, that's not the issue. The issue, you know, is before and after, as you said, what's the reality of this lease? What's the rental income going to be of the other spaces that are supposedly being improved? And how much other improvements are going to have to be put into those other rental spaces to make it work? There are also issues regarding this property regarding parking. There's some real unknowns that we weren't able to get into with the court because we just didn't have that opportunity, as you saw in the record. All right, thank you. All right, Mr. Lutkehans, what's the burden of proof at this type of a hearing when shifting priority of liens? Is it the ordinary burden of proof in any civil case of preponderance of the evidence? No, I think the cases are that it's clear and convincing evidence. Is that because the language of great caution is used? Yeah, and I think there's, and I can't remember the case, and I apologize, maybe I'll find it in the break, but there is a case that talks about it's not just, you can't just, you know, it's not the normal burden of proof in a civil case. Well, I've read numerous cases, and I haven't found one that said it's clear and convincing, but the language great caution would seem to indicate that it's a little bit more than just a you know, they talk about, and I'll glance, I think the places, and maybe it doesn't say clear and convincing, but they talk about clear, they talk about the, it has to be apparent. It's, you know, it's somewhere in that range. In any event, your position is these questions must be answered by the evidence report, correct? I'm sorry, I heard a cough, and I missed your last question, sir. Your point is that these questions that are raised in the briefs need to be answered by the evidence, not just by arguments of counsel. Correct, and that, you know, only with that evidence could the trial court make a full determination, and could you, if it ever came back up on appeal. The cases talk about an unremitting vigilance by the court in proceeding with this type of order, correct? Yes, sir. All right, that's all I have. Thank you. Mr. Adamo. Good morning, justices. May it please the court, my name is Greg Adamo. I represent the Plaintiff Brief PCG. Our brief, as you know, was filed jointly with the proceeder, Mr. Gann. Mr. Gann has joined us on the call today. If your honors have any questions about the current status of the property, I believe he would be able to answer them. The lower court correctly followed 100 years of precedent in determining that the receiver certificates in this case were a first priority lien over all the other liens in this case. As this court knows, receivers are appointed in a lot of foreclosure cases, many to manage the property on behalf of all the parties. The receiver is a neutral third party, an officer of the court, whose job is to protect the underlying value of the collateral. The arguments raised below are really twofold, as the court addressed in the introductory argument by appellants. First, the appellants argue that no court in Illinois can ever subordinate a mechanic's lien behind a receiver certificate. They make a facial argument on the basis of section 16 of the lien act that forbids essentially any subordination. On this score, the appellants are simply wrong. They've been very cavalier in their assessment of the precedent. For 100 years, Illinois law has allowed a receiver to borrow against the property and subordinate all prior lien claims, even mechanic's lien claims. The lower court specifically relied upon Pittsburgh plate grass, and it did so correctly in authorizing receiver certificates to take a priority position. The pivotal language I think really comes from the Supreme Court itself. It says, and I'm quoting, we are of the opinion that the trustee of Peter France, securing the receiver certificates, should have been made a first lien, and that the claims of the defendants in error, were mechanic's lien claims, should have been made second lien claims. That's not just some lawyer saying that. That's from page 734 of the Northeast Reporter. The case was pivotally about priority of the lien claims, and the Supreme Court has decided that, and rule, and held that mechanic's lien claims can be subordinated. That is an opinion that this court is bound to follow. Factually, there are any number of similarities between this case and Pittsburgh plate grass. You have an untenable building, in fact, the court considered. We have lien claimants who had not been paid, of course. There was a need to complete the project. Obviously, that is transparent here. That was also true in PPG. The court made a finding here, and in PPG, no lender is likely to make a loan without some assurance of repayment. That is somewhat common sense. You expect that to be true, and we have a court declaring that it's in the best interest of all parties. That's really what this is. The PPG case is an effort to define the test under which a receiver can take a priority position above a mechanic's lien. The correct way to view that is whether the decision is within the best interest of all parties. The lower court here decided that it was, and did so correctly. I'm going to turn briefly to the evidence, I think. There are some arguments that the court did not have. The appellants make the argument that the lower court did not have a sufficient amount of evidence to decide this case, and that is simply incorrect. The lease in this case is the critically the most important factor. It is a factor that actually enhances this case relative to the other cases that have been cited in the briefs. I would say Cody Wright is one, Equitable Trust is another, even Pittsburgh Play Glass. Here, we have a guarantee from the federal government that if we are able to perform on this lease, it's signed, executed by the federal government, that they're going to repay for the vast amount of borrowing that would be undertaken by the receiver. The exact amount on the lease is 8.5 for the build-out expense. That's in section 1.03 of the lease, which I copied into the brief, and an additional 1.5 in amortization costs. We have a contract with the federal government under which we intend to take this borrowing in an effort to improve the value of the property. That just addresses the costs. After the build-out is completed, they're going to make payments of rent over the next 10 years, possibly 15 if they execute on their option. It's obvious that that is an enhancing effect to the property. That is certain to generate revenue in excess. It's going to make this property more valuable. I would say, consider what would happen if we don't do this. We're at some point or another, it's going to have to be completed for some tenant at some point down the road. Alternatively, the property is going to be sold as just a bundle of sticks. That's not going to be enhancing the property either. The receiver's job as a neutral, as an officer of the court, is to make these assessments and decide what's in the best interest of the property, what enhances the collateral the most. The decision that was made here is part of the motion and also part of Judge Wheaton's decision is that it is valuable. At hearing, we held a hearing in this case. The central ruling in the case is that it was exactly that. What's different about this case from all the other ones is that we have a lease, we have a promise to pay, we have an existing contract. That contract predates, it's not a new contract, it predates the foreclosure. The receiver really shouldn't be in a position to decide, well, I'm going to definitely breach this contract because I decided it's not going to be that valuable. The receiver has to make a decision whether he's going to do that or not. And when it comes to the quality of the evidence, any of the lien claimants who are objecting, and now there's only a couple, any of the lien claimants that wanted to object could have asked the receiver at the hearing, what are your prospects of this? What is your assessment? How do you base this? None of them did. None of them really objected to the entry of the, or to the terms of the lease in itself. And the court made the assessment that conducting a valuation of the property, as Mr. Luebbehans has asked for, wouldn't be inherently valuable over the obviously and clearly plain value of this particular lease agreement. My clients have loaned $17 million in this property. Plume Constructions, who's represented here today by Mr. Hemera, is owed $15 million. Air Comfort, who has joined this case, is also owed millions of dollars. We all understand that subordinating these loans was necessary and is in the best interest of the property. It is a lone couple of holdouts. We're seeking opportunistically to stop it. This court should affirm the lower court ruling. If you have any questions, I would feel free to answer. I'm happy to answer. Justice Zito, if you have questions. Thank you. Counsel, by allowing new construction money to take priority over the existing lien claims, wasn't the trial court transferring the investment risk from a lender to the subcontractors? No. The new work can't be completed without a loan. In effect, what happens is that the new value that would be captured by the lease wouldn't exist without the loan. The new lender gets a priority position. With respect to my client, and I think the order is clear on this. I sure hope it is. The subcontractors can still pursue their lien claim. They may take a priority to the extent that they enhance the property. If they can prove their case, at this stage, we don't know. Of course, we don't know. They want to stop this lending and they haven't even... The court hasn't decided whether their liens are valid or not, which is another issue. It is not a transfer from the subcontractor to the new lender. It's a creation of new value that will help everyone. How do you respond to opposing counsel's argument and answer to the question of what else would have been needed in an evidentiary hearing? All of these pieces of evidence were missing. All of the testimony regarding what the value of the building would be left or sold without improvements with the lease, with the improvements, et cetera, there was a list given. Why is just the analysis, if indeed, we know that the lease wasn't authenticated, it was just attached to the motion. Why is just looking at the lease sufficient here? Looking at the lease is just sufficient here. This is a somewhat unique case, I'll grant you, because the leak is so obviously clear that this is a good decision to make. The vast majority of the lending in this case won't be repaid by the federal government upon this. Now, the court, and I think correctly, decided that she wasn't going to need or require expert testimony, which if you look at the transcript, that's really what the appellant wanted. We need to bring in experts and turn this into a battle of experts about whether this is going to be an improved value or not improved value. That was not going to be a useful exercise in this case. It's obvious. It was obvious that the lease is valuable. If this lending doesn't get done, everybody's in a terrible place on its property. It's going to be very uncomfortable for everybody. But there was no information regarding whether the GSA rent payments would be used to pay off the mechanic's liens, or when that would happen, when the property might be sold, or if it would be sold. Why isn't that important? Well, I do respectfully disagree. It's not a question about whether the money would be paid. The judge made that clear in her ruling. I addressed this on page 21 of my brief. It's clear that the new rent that comes in is going to be at the discretion of the court. The new money coming in would be available to be decided, would be split up by the court. Once the lease is in place, the federal government starts paying money, that money's not going to the lender per se. It's coming in, and if there's any excess rent generated, that is certainly part of what the lien claim is complaining is the value of the property. Okay. Thank you. Those are my questions. Thank you, Justice Phenol. Justice Brennan? Well, $100,000 a month is going to go to pay off the new first priority $12 million mortgage, right, at 10% or 12% interest rate. There's a lot of things that are going to impact the ability of the mechanic's lien holders to ultimately recoup their money. And I want to go back to Judge Wheaton's discussion about, you know, appraisals varying and of being, you know, not necessarily so important after her 32 years of experience, as she puts it. My question is this. I mean, right now, the lien holders, if they force this into foreclosure, they might, I realize that it's not a guarantee, they might get 30 cents on the dollar. Now, sometimes that is something you don't want, but sometimes it is something you want, and Section 16 basically concludes that occasionally that's what's going to happen. I accept that Section 12 exists, and I accept that Pittsburgh plate glass interpreted Section 12 to have this implicit power to reprioritize liens. But when we look to the concept of great caution that's urged by the cases in exercising that equitable power, I just keep looking at this record, and I keep, it just seems to be nothing other than guessing. I have no doubt that the GSA lease, if it goes forward, will add value to the building. I don't think anybody doubts that. The question is, will it add enough value that ultimately it's apparently clear that the lien holders who are objecting are going to be better off? And how do we say that without any appraisals one way or the other to answer that question? To answer your question, Justice Brennan, this, I think it is, you know, this is a case where the receiver is appointed in January. There's this lease that has various deadlines that require us to meet. If we lose it, we're going to lose this deal, and a decision has to be made somewhat abruptly. Now, the... Can I ask a question about that? Sure. Because this lease, if I recall, was signed in October of 18. That's right. And not a single thing happens on it for an entire year or more, and then all of a sudden it's this great emergency, you know, to come in. We need this right now. An $8 million buildout, I assume, is not going to happen between May, which was the date that supposedly GSA was going to move in. I imagine they're not there now. They are not there now. Mr. Gann can sort of address it if you have any questions about it. But in effect, the buildout, the $8 million buildout can be completed, McLoone Construction has joined us, that can be completed within about three months. Very likely over the last, you know, handful of months, the GSA, and I'm... This is, you know, extemporaneous of this appeal, probably would not have been able to move in because of the COVID situation, at first. Now, that has sort of hamstrung everybody in all industries. We're setting that to the side. The lease does have deadlines, and we have to meet those. And, you know, to have a battle of the experts over what the values of the property are going to be or not be over this was simply just not something the court felt was going to be necessary, given that it was so obvious, so completely obvious that this high credit quality tenant had leased this space at an arm's length transaction before the foreclosure had started, and was promising to pay very, very good rent. It was going to make a huge difference to everybody. And so against that backdrop, I think the court correctly decided that a battle of the experts was not going to be necessary, that it would have been that in this fairly unique situation, where there's a pre-existing lease with a AAA quality credit on either side, it simply wasn't going to be necessary. This was a transaction that it was obvious that it needed to go forward, and I think that was the correct decision. I understand the case law says it should be made with great caution, and I agree with that as a principle, but in this case, it was a decision that was made with great caution. One other question. I just want to make sure that my research is correct. Is Pittsburgh Plate Glass the first and last published opinion that approved the reprioritization of mechanics liens? To my knowledge, it is the most recent case addressing the reprioritization of mechanics liens. It has been the regime for 100 years. I've not been able to find any case law or any conflict among the circuits that interprets Section 16 otherwise. Equitable Trust and Cody Wright, which were both cited in the briefs, both cited in the trial court, those cases deal with corporate receivership laws and not mechanics. All right. Thank you very much. Just very briefly, Mr. O'Donnell, you say in your brief that the record is uncontested, but that point does not answer all of the questions that the lien holders had, correct? It does not answer all the questions that the lien holders have. The lien holders have many questions. Mr. Lukerhan raised some of them today about what other values of the property, what lease could be derived from other space in the property. Those are questions that could be raised, but they aren't enough to alter the trial court's decision. They wouldn't have changed the decision. Before Kloon changed its position in the response in the trial court, they raised the same type of questions, correct? Their underlying motion raised some of the same type of questions. If you look at the transcript of the proceeding, you would see Kloon essentially conducted their own analysis. The $5 to $6 million figure does not come from me. That comes from Kloon's own assessment of what the property is worth without any improvements. Whether that was a factor or not, I suppose that's something you can ask Mr. Hemera. I don't think he completely switched his position. I've read his brief and I somewhat agree with it, but there was some modest change in his posture. That's true. The point is, aren't the lien holders entitled to have evidence before a court proceeds to reprioritize their liens? Of course, they're entitled to that evidence. Of course, they're entitled to that. Questions are satisfactorily answered by the representations of the receiver. They are. All right. Thank you very much, Mr. O'Donnell. Mr. Hemera. Good morning, your honors. This is Jeff Hemera for Kloon Construction. I think the law that needs to be discussed has been handled quite well by the court and counsel. Kloon is in agreement with Reif that Pittsburgh plate glass applies and interprets Section 12, which implicates Section 1704 of the Mortgage Foreclosure Act. Whether those were before the court below or not, I think that the court was correct to note that you can consider those. We believe those are dispositive of the law. It seems like there's been a fair amount of discussion about Kloon's position and the switching of the position and also what evidence there is and how the court could determine the value of this GSA lease and the prudence of going forward with new money. Kloon has always had the position that we want to maximize the value that Kloon and its subcontractors will be able to get out of this going. It's certainly uncertain and it's a tough question. In our response to the motion, we raised questions as to limitations on the loan, both in term and interest rate, which I think are important. Once we couple those restrictions along with the terms of the lease, I think that's the decision that's certainly not an abuse of discretion. I think also well-founded. Frankly, that was the evidence that is the core of the financial analysis that was alluded to that Kloon had done. We had an appraiser look at the lease and at the potential terms of the loans and determined, although it was a close call, it was for the best interest of the lien holders as a group that the receiver certificates be issued and be issued as a first priority lien. That was presented to the court not just as argument but also by the receiver as what the receiver planned to do. At that hearing and in the order, Judge Wheaton restricted the terms of the receiver certificates that could be issued in a manner that would make this financial good decision for the parties collectively. That's why Kloon supports the issuance of the receiver certificates as restricted by Judge Wheaton's without looking at the total brief and other portions, which I think put a better light on Kloon's position that if Kloon had concluded that this wasn't a good financial move for the lien holders, we wouldn't support it. There's other speculation about Kloon's motive, which is not well-founded. I'll stop at that point. I could expound on some of the statements that Mr. Adamo had about the construction and the timing, if that would be of assistance. Justice Eno, any questions? Yes. I had been thinking about why Kloon did change its position. I want to make sure I understand you and what you indicated. Am I correct in the fact that I heard Kloon retained an appraiser itself to actually look at the value of this lease and the effect it would have with respect to whether or not there were any improvements made? The lease was signed and the improvements made so that the GSA could occupy the space. Is it based on that appraisal that Kloon got, that Kloon changed its position? That's essentially correct, Your Honor. We were provided, and I think all parties, frankly, were provided with formal appraisals that REIF had undertaken in the past, but we hired a separate appraiser to do an evaluation of primarily the GSA lien and the proposed financing, but also to look at other conditions at the property. That's really the core of our decision-making on this. That information was presented in court at the summary of it. That analysis, again, focused on the lease, which was in front of Judge Wheaton in one format or another, and then the terms of the lending was the other key component, which is what Judge Wheaton decided. Essentially, that's covered by the order and the receiver's certificates. Now, you indicated that the information was presented to the court. Was it presented and shared with the subcontractors prior to the hearing? No. The analysis that we had procured has not been... The details of the analysis have not been given to the court or to the other parties as an expert analysis. The only thing that was presented was essentially what I told you here and what is in the transcript about my summary of that analysis. Right. Was there an offer to do that on Boone's part? There was not an offer. The issue did not come up at that time, to my recollection. Okay. Thank you. I don't have any other questions. Justice Brennan. If I recall from the transcript, the numbers that you did provide to the court, you had indicated that the appraisal, for lack of a better word, had not actually been formalized or finalized. Is that recollection correct? That is correct, Your Honor. All right. It was not formalized into what an appraiser would call an appraisal. It was conducted sufficiently for Kloon to make a business decision to support the issuance. All right. Thank you. Mr. Hemera, during your argument, you mentioned that this was a close call for Kloon. Aren't the other lien holders entitled to have evidence to make it a clear call and not a close call? I'm not sure. They're certainly entitled to the evidence. I think they have everything that Kloon had to go into an appraisal or an evaluation. The difference between a close call and a clear call, I think at the end of the day, I'm not sure that those are mutually exclusive. I mean, I think it's going to be close, but I think it always ends up on the side of this being a good move because the GSA numbers and the lease terms are clear. The restrictions on the loans are clear, and that ends up with a net benefit to the property. It's not tens of millions of dollars net benefit, but it's a net benefit. There was no stay, correct, in this case? That's correct. So, on this record, we still don't know what's going on, and we are not taking evidence. We don't know what's going on with the GSA lease, correct, on this record? Correct. On this record, there's certainly things have transpired since the trial court hearing that are not in the record that I know Mr. Gann is available to discuss, but that's correct. We don't take evidence. I understand. Thank you. All right. Mr. Penrose, rebuttal. I'm sorry, Your Honor. Is it my turn again? Yes. Okay. Thank you very much. Just quickly in rebuttal, I've been listening to all of the arguments, and as I said out in my opening, I think it rang true. No party has explained or otherwise indicated that these receiver certificates do not violate Section 16. I think that has to have been conceded. So, the question then, coming back to 16, is what power does a court or a receiver have to violate a statute in the name of equity? So, it struck me as I was listening that we supplied the answer, actually, on page 12 of our brief from an even older case, if we're dealing with older cases, the Stone v. Gardner case from 1858 that states, we do not know of any power existing in a court of equity to dispense with the plain requirements of a statute. I think that's the answer, and that is the answer that I think that the court has to follow, notwithstanding PPG. PPG, and I think we stated in our opening, certainly, there are some factual similarities, but what's not similar is that court did not reference Section 16. It referenced Section 12, but Section 12, even in the name of equity, cannot violate Section 16. So, this court, I think we've narrowed the issue, is PPG say you can violate Section 16 in the name of equity, contrary to Stone, even though PPG did not mention Section 16. I think that's really the entire case, because if Section 16 is violated and the court order violates Section 16 and it's reversed as a matter of law, it doesn't matter what the evidence is. That's only a secondary issue that this court goes past Section 16 and said, okay, if they have this authority, what evidence was sufficient? So, it's really a two-pronged argument, as we laid out in our brief, and I return back to Cates, because Cates talks about, you can't just imply judicial dictum or even regular dictum. It has to be something where it was, and I'll use a colloquial term, it has to be sussed out. Because Section 16 is so clear, it does not give any exceptions. If the court 100 years ago was really going to say, ignore Section 16, it clearly would have said so. You can't carve an exception to a statute, sub salientio, and expect everyone to understand. And I think that's really where this court is left with no choice but to examine Section 16, as I outlined in my argument from the beginning, and find out how you can get over that language, because no party said that language gives you the authority to do that. It's just kind of this ethereal, but Illinois Laws also, equity doesn't give you a chance to ignore a plain meaning of statute. Statute is not ambiguous, no party has said that. So I think that's really where court has to find that this order needs to be reversed. I'll stand down on that, and if there's any questions. Thank you, Mr. Penrose. Justice Enoff, your questions? I don't have any. Justice Brennan, any questions? I don't have any either, thank you. I just have one quick question, Mr. Penrose. It seems to me that all of the lien holders wanted answers to their questions, and most of them were satisfied that this was in their best interest, but not your client, correct? Your Honor, I think the answer is a little more nuanced than that, and I think it has to do with what's at issue. Our client has $4.9 million at issue. We are the biggest lien holders. Sure, Coonflau, their mechanics lien for $15 million, but when you get down below the surface, 90 plus percent of that is the subcontractors, and subcontractors, and this is clearly not in the record, but I can tell you as an officer of the court, some subcontractors did not like this, but they just didn't have enough money at issue to pay a lawyer to pursue it. Our clients obviously, this is a huge number, and I would say the same thing with Hill. So in terms of agreeing, I think the best you could say there was reluctant agreement by non-appeal, but I think that's beside the point. The law is the law, and whether they have a dollar at issue or $10 million at issue, if the order violates Section 16, then as a matter of law, it has to be reversed. I don't think equity gives, you know, the biggest bat should not win the battle. The law should win the battle. All right. Thank you, Mr. Penrose. Mr. Luekehans. Yeah, thank you. I'll be real quick. We kind of, the discussion about Cloon, yeah, and I was going to mention that the $15 million isn't really Cloon's number. It's mostly ours. It's mostly the subcontractors. And, you know, and there's a lot of things that have went on that are not in the record as to why some of these subcontractors agreed to not proceed and why some that proceed, one, at least one that proceeded has no longer proceeding. But, you know, the other thing is, yeah, Reefs owed $17 million. We heard that. But Reef, or their affiliate, is the company that is offering to give this new loan at such a high interest rate. Those are the kinds of things that we didn't get into or were not able to get into at the trial court. You know, 12% and 10%, I don't think I'm speaking on a turn right now, is a pretty high number in this day and age. If Cloon needed that analysis to make their decision, it's an analysis that I think the court needed and we needed as well. And if that analysis is made and we see all the facts, you know, we walked in that hearing, and I think you'll see in the transcript, we weren't dead set against this concept. We were dead set against the lack of information and the ability to know whether this was good. We're not fighting this because we want to get less money. We're fighting this because we don't know the answers. And without a full hearing and without an opportunity to really proceed, and, you know, we could have gotten an appraisal. Yeah, we could have. We had about 10 days. That's not the kind of time period. We hadn't been in this case. We don't have, you know, the stake in it that some of the other ones did. Ours is significant. But we didn't have that kind of timing to go out and get an appraisal, really understand, get through the GSA lease and get, you know, a qualified MAI or any other appraiser to say, okay, yeah, you're better off before versus after. And there are other questions on rates. There's questions on the ability to improve the other space or at what rate or how much actual improvement would have been needed for a different tenant versus the GSA needing, you know, 8.5 million. So I won't take up any more of your time. But there's just these open questions that we didn't feel comfortable to know the problem we have. And I think that's the problem Judge Wheaton should have been looking at and thought she didn't need it. But I think, obviously, we all think, obviously, we think we do and have the right to it. So thank you for your time. Thank you, Mr. Lukiach. Justice Inouye, any questions? No, I do not have any. Justice Brennan? Well, the court thanks both parties, all parties for their excellent arguments this morning. The case will be taken under advisement and a written decision will be issued in due course. I will just mention that, you know, negotiations can continue and parties can sometimes settle before a disposition is issued by the court. Have a good day, everyone. Thank you. Thank you. Thank you.